### JOHN DONOVAN'S APPEAL FROM PROBATE.

A married woman 'borrowed money of *A*, with which she purchased a piece of land, taking a deed in her own name, soon after which she died. No note or other written obligation had been given for the loan. Held that her estate was in equity liable to *A* for the amount of the loan. (The Chief Justice dissenting.)

The general property rights of married women being now recognized by sundry statutes, their right in equity to make contracts affecting their property is no longer limited to such property as they hold to their sole and separate use.

Such a contract, made by a married woman for her own benefit or that of her estate, but without the statutory requisites for making it binding upon her at law, will be binding on her in equity, where she or her estate has received the benefit of the contract.

Courts of probate are as to all matters within their jurisdiction courts of equity as well as of law, and commissioners on insolvent estates can act upon equitable as well as legal claims.

APPEAL from the allowance by commissioners on the estate of Maria Donovan, of a claim in favor of one Benjamin Fowler; taken to the Superior Court in New Haven County. The appellant was administrator of the estate.

The court (*Hitchcock, J.*) found that on the 13th day of September, 1869, Fowler loaned $620 to Maria Donovan, then the wife of the appellant, with the knowledge and consent of her husband; that she borrowed the money to pur-

chase in her own name certain real estate in Naugatuck; that she did, with the knowledge and consent of her husband, purchase the real estate, took the title in her own name, and owned the same until her death, and that the same was inventoried as part of her estate.

That at the time she borrowed the money she was carrying on no business in her own name, and she did not execute to Fowler any promissory note or other writing for the payment of the money loaned. That she and her husband lived together until her death, which happened on the 1st day of February, 1870, and had six children, the fruit of the marriage, who are now living.

That the claim was presented to and acted upon by the commissioners on her estate within the time limited by the court of probate.

There was no evidence that the said Maria ever owned any property, except that purchased with the money borrowed, and a piece of land conveyed to her. through a third person by her husband,—both which pieces were inventoried by the appellant as a part of her estate.

The appellant claimed that as the said Maria was a married woman at the time of borrowing the money, she could not contract any valid or binding indebtedness, unless she had estate free from the control of her husband, which could be set apart for the payment of the same. And that as she had carried on no separate trade or business on her own account, and was not and had not been abandoned by her husband, and had not promised in writing to pay the indebtedness, the case did not fall within the provisions of any statute relating to married women, and that therefore no decree could be entered against her, or against the fee of her property.

The court decided both these claims of the appellant adversely, and held upon the facts that the claim of the appellee was an equitable one upon the estate of the said Maria, and allowed the same accordingly.

The appellant filed a motion in error and for a new trial, assigning as error the above rulings of the court.

*O'Neill*, in support of the motions.

Maria Donovan, the deceased, borrowed money and invested it in land, taking the title in her own name in the usual form. She had no separate property, carried on no separate business, made no promise in writing, and never was abandoned by her husband. Can the money loaned be recovered?

1. The contracts of married women are invalid at common law; but in equity she is treated as a *feme sole* with reference to her separate estate. *Butler* v. *Buckingham*, 5 Day, 492. Her separate estate is that property alone which is settled to her sole and separate use. *Id.* Equity has never regarded the fee of land as the subject of separate property. She can convey this only in .the manner prescribed by statute. *Yale* v. *Dederer*, 18 N. York, 269; 2 Roper on Husb. and Wife, ch. 19, § 2; 2 Story Eq. Jur., § 1392; Clancey on Rights of Married Women, 287. A decree of court against the fee of land was held erroneous in *Wells* v. *Thorman*, 37 Conn., 318, 320. Any other conveyance of her land is void by our law. Gen. Statutes, tit. 37, sec. 26; Tiff. & Buckl. on Trusts, 654, 658. Agreements for the sale of her land, or deeds defectively executed, will not be enforced at law or in equity. *Watrous* v. *Chalker*, 7 Conn., 224; *Dickinson* v. *Glenney*, 27 *id.*, 110, 113; *Lane* v. *McKeen*, 15 Maine, 304; *Purcell* v. *Goshorn*, 17 Ohio, 105; *Jewett* v. *Davis*, 10 Allen, 68. But the finding here is that she had no separate estate. We are not able to distinguish this case from that of *Smith* v. *Bird*, 3 Allen, 35, where it is said, on appeal from the allowance of claims by commissioners, " that no claim arises against a married woman for money paid at her request, in reference to land not settled to her sole and separate use." See also *Crane* v. *Kelley*, 7 Allen, 250.

2. If the appellee has any remedy, it is only in a court of equity, where the heir can be cited in and compelled to execute a conveyance of the legal title. Reeve's Dom. Rel., 171; *Leavitt* v. *Birne*, 21 Conn., 8. This is on the assumption that the fee was settled to her separate use.

3. If her estate had been separate estate, there must have been an intention to charge it. There is no evidence that she expressly charged such property; or that the loan was for her own benefit, on the credit of such property, or that the debt was contracted for the benefit of such property. *Yale* v. *Dederer*, 18 N. York, 269; *S. C.*, 22 id., 450; *Corn Exchange Ins. Co.* v. *Babcock*, 42 id., 613; *Willard* v. *Eastham*, 15 Gray, 328.

4. The contract of Mrs. Donovan was void. No action, either at law or in equity, could be maintained upon it. By the act of 1872 it was intended that actions might be brought on such contracts as she had power to make; that is, actions might be brought at law, when she had bound her property in equity. But the only act in force now is that of 1873, permitting actions to be brought against married women who carry on business, or who promise in writing. All provisions inconsistent with these are repealed. The act of 1872 ought not to have a retrospective operation.

*Terry*, contra.

1. This was a valid contract on the part of Mrs. Donovan. She borrowed the money for the benefit of her estate, and her estate has received the benefit in the land purchased, and which is now inventoried as a part of her estate. The statutes with regard to married women should be liberally construed, it being the policy of recent legislation to extend their rights and increase their liabilities. *Langenbach* v. *Schell*, 40 Conn., 224. The equities are all with the appellee; he parted with his money in good faith, and the court will allow the claim, if equity or any possible construction of law will permit.

2. If she had no power to contract, then no title to the money passed, and she held it as a simple *deposit*, " with the knowledge and consent of her husband," and it belongs to the appellee wherever he can trace it, even though invested in real estate in her name.

3. The appellee is entitled to have his money refunded, or to a conveyance of the real estate purchased with it, and

as the appellant has presented her estate for settlement in the court of probate and inventoried this specific real estate, it makes no difference with any one whether the claim is paid out of the general fund, or by a conveyance of the real estate.

CARPENTER, J.   A married woman borrowed money of the appellee, with which she purchased real estate, taking a deed in her own name.   No note or other written obligation was given.   She died.   Her husband, as administrator, inventoried the real estate, and represented her estate insolvent. The claim for money loaned was allowed by the commissioners, and the administrator appealed.   The Superior Court affirmed the doings of the commissioners, and the appellant moves for a new trial, and files a motion in error.

The equities of this case are very strong, and the claim should be allowed unless some inflexible rule of law absolutely forbids it.

It is claimed that the case is not within the act of 1869, because she was not carrying on business, and did not contract in writing; that the act of 1872 does not apply; because this suit was pending when that act was passed, and it is provided that it shall not affect any suit then pending; and that it is not a contract binding upon her in equity, because it is not a contract relating to estate which was to her separate use.

It must be conceded that the act of 1872 has no direct bearing upon the case, and that no action at law could be maintained on this demand under the statute of 1869.

The question whether it is a claim which equity will recognize and enforce still remains.

The appellant's counsel rely upon the case of *Butler* v. *Buckingham*, 5 Day, 402, decided in 1813.   It was there held that the estate of a married woman which could be affected by her contracts, was "such estate only, be it real or personal, as is settled on her for her separate use, without any control over it on the part of her husband."   It is strenous-

ly insisted that such is the law of the state to-day, except as it is expressly changed by statute.

The rights of married women in respect to their property were very different then from what they are now. The husband then had a life estate in her real property, which might be disposed of or taken for his debts. All her personal property vested absolutely in him, was subject to his debts, and he might otherwise dispose of it without her consent. All the property over which she could legally have any control, was that which was settled on her for her separate use. She could make no contract for the sale or purchase of real estate, except in the manner provided by statute, which could be enforced in law or equity. Personal property she could neither acquire nor hold, consequently she could make no contract in respect to that. In that state of things it was eminently befitting and just that whatever right she had should be carefully guarded.

It was necessary, in such cases, to resort to a court of chancery because of her total inability at law to make any contract, and because the property, which was the subject of her agreements, was usually, if not always, trust property. But even then the principle was fully recognized that the right to own and possess property carried with it a limited right to dispose of it; and that these rights carried with them corresponding obligations.

Now by statute the law is materially changed. Her personal property vests in her husband in trust for her. It cannot be disposed of without her consent, and the use of it is secured to her and her family during life, and at his death, if she survives him, it goes to her; and if he survives her, at his death it goes to her heirs. In like manner his interest in her real estate is exempt from execution, except as to one class of debts, and in case he abandons her all her property immediately vests in her, free from any control by him.

She may also carry on business as a feme sole, and make any contract on account of such business, may make promissory notes or other writings for the benefit of herself or her estate which will be binding, and, with respect to many of

these transactions she may sue and be sued as a feme sole. Her right to hold and possess property and her power over the same being greatly enlarged, her duties and obligations are correspondingly increased.

The act of 1869 was in force when this contract was made. It provides that " whenever any married woman shall carry on business, and shall incur any debt or obligation on account of the same, or shall execute any promissory note or other instrument in writing, either alone or jointly with her husband, for the benefit of her sole estate, or the benefit of the joint estate of herself and husband, she shall be liable for any such debt or obligation, and upon such note or instrument, and may be sued either alone or jointly with her husband, and her property may be taken in attachment or execution as if she were unmarried."

This statute does not authorize an action at law on this demand, but it does not follow that there is no remedy in equity. The statute clearly recognizes her right and power to make contracts for the benefit of her estate. If made in the manner indicated by the statute, a legal liability arises. If not so made, still, if her estate receives the benefit of the contract, it is equitable that it should be liable for the debt thereby created. The principle which lies at the foundation of *Butler* v. *Buckingham*, when applied to the changed condition of our law, will fully sustain such a liability. It was not the intention of the legislature to prohibit a contract, which was in substance what the statute contemplated, merely because some formality required was omitted. The statute was designed chiefly to give an additional and more simple remedy, and not to limit or enlarge the power of a married woman over her property.

That is not only a sound construction of the statute, but it is in harmony with the law as it formerly existed, that property owned by a married woman, the use of which the law secured to her, and which was to some extent subject to her control, should under proper limitations be subject to her contracts.

Moreover this view of the law is the one which prevails

among business men generally. The public have come to believe, and to act upon that belief, that a married woman, having property of her own, may make contracts for the benefit of herself, her family, and her estate; and that, in cases where she actually receives the benefit of the contract, it will be binding upon her and her estate. The fact that at the present circuit we have had three cases before us involving substantially this question, is significant. It shows a disposition on the part of the public to give credit to married women possessed of property; and also, unfortunately, it shows a disposition on the part of some to avoid, if possible, the payment of a just debt. It is neither creditable to the law nor to the court if a claim like this, where the equities are so manifest and so strong, cannot be collected.

The validity of such claims has been repeatedly recognized by this court. This case is distinguishable from the case of *Langenbach* v. *Schell*, 40 Conn., 224, only in the circumstance that there a note was given, and here there is no writing. But if we are right in our construction of the statute of 1869, that affects the remedy only, and not the validity of the claim.

In *Wells* v. *Thorman*, 37 Conn., 318, husband and wife carried on business in her name and with her capital. In 1868, before the passage of the act of 1869, she contracted for the alteration and repairs of a building which she had leased. The repairs were for the advantage of her business, and therefore benefited her estate. It was held that her personal property, which was benefited by the repairs, was liable in equity for the expense.

In *Buckingham* v. *Moss*, 40 Conn., 461, the plaintiff's intestate furnished supplies to the defendant, a married woman, living with her husband, and who owned a farm and had a family. Credit to the husband was refused. It does not appear that there was any note or other written obligation. In an action at law, under the act of 1872, it was held that the defendant was liable. The court held distinctly that the act of 1872 was not intended to create and did not create any new liability. It imposed no duty, no obligation, which did

not previously exist.  It simply changed the form of the remedy.  That case seems to cover the whole question involved in this.

In *Jennings* v. *Davis*, 31 Conn., 134, a note had been given payable to a married woman for the price of her land sold. Afterwards the maker did work on buildings belonging to her, under an agreement with herself and her husband that his bill of work should be indorsed on the note as part payment of it, which however was not done.  In a suit between the representative of the husband and the representative of the wife, it was held that the note belonged to the wife's estate, but that the bill of work ought to be applied in part payment of it.

Thus it will be seen that we are not now establishing a new principle, but are following recent decisions in applying well-established and familiar principles to the existing state of things.

A court of probate in this state, as to all matters within its jurisdiction, is a court of equity as well as a court of law, and commissioners on insolvent estates take cognizance of equitable as well as legal claims.

The claim in question was properly allowed, and there is no error in the record, and no ground for granting a new trial.

In this opinion the other judges concurred; except PARK, C. J., who dissented.