43 327
62 454
43 327
73 701

THE NATIONAL BANK OF NEW ENGLAND *vs.* WHITBY M. SMITH AND WIFE.

A married woman whose husband kept a store, the goods in which had been attached by his creditors, and who herself kept boarders, she and her husband constituting the whole of their private family, executed a note with him for a loan of money, procured and used to pay his creditors under a compromise agreed upon and release the attached property and prevent the attachment of the house, in which he owned an equity of redemption, giving at the same time a mortgage of the furniture, which was her private property. Held that she could not be regarded as having made the contract for the benefit either of herself, or of her family, or of her estate, and that therefore it was not binding upon her at law under the act of 1872, (Gen. Statutes, p. 417, sec. 9.)

ASSUMPSIT upon a promissory note executed jointly by the defendants; brought to the Superior Court in Middlesex County. The defendant Whitby M. Smith suffered a default, and the defendant Susan E. Smith pleaded the general issue, on which the case was tried to the court before *Granger, J.* The court found the following facts:

The two defendants are husband and wife. Prior to August 27th, 1867, Mr. Smith was a merchant in the town of East Haddam, carrying on business in his own name, and was then the owner of a dwelling-house in which he and his wife lived, which he had purchased the year before for the

sum of $2,700, subject to a prior mortgage, and also of a horse and wagon and some goods in his store, and that he was then and is now insolvent.

At that time some of his creditors having attached the goods in his store, he went to see William H. Goodspeed, to whom he owed $500, and told him his condition and asked his advice, saying that he could pay fifty cents on the dollar. Goodspeed examined his affairs and told him he could not pay twenty-five cents on a dollar, and advised him to have a paper drawn for his creditors to sign, releasing him on payment of twenty-five cents on the dollar. This was done, and Goodspeed and his other creditors signed it. Subsequently Smith told Goodspeed that he was disappointed in making his collections, and could not pay twenty-five cents on the dollar as he had agreed. Goodspeed told him that the Bank of New England, of which he was president, would probably lend him $1,000 to meet his obligations, if he would secure them by giving a mortgage on his house, and on the furniture of his house, (which was handsomely furnished,) including a very valuable piano. Smith said that the furniture and piano belonged to his wife. Goodspeed then told him that he might arrange it by giving a note for $500 secured by mortgage on his house, and by a note signed by himself and his wife, secured by a mortgage of her furniture and piano. Subsequently Smith told Goodspeed that he had talked with his wife and that they had concluded to do so. Accordingly Mr. and Mrs. Smith went to the office of an attorney and had him draw a note of $500 and a mortgage of the house, which were signed by Mr. Smith, and a note of $500 and a mortgage of the furniture, which were signed by Mr. and Mrs. Smith. Mrs. Smith took the papers and went with her husband to the bank, and there negotiated the loan for $1,000, giving to the bank the two notes for $500 each, and the two mortgages. The bank at first objected to taking the mortgage which she had executed because it did not include the piano, but she told them that she did not wish that to be included, and that the furniture was amply sufficient to secure the $500 note, and they finally accepted it. The money was

National Bank of New England *v.* Smith.

used to pay the creditors of Mr. Smith, and his goods were thereby released from attachment, and he continued in his business ; and of this the bank had knowledge.

Mrs. Smith, prior to and at this time, was keeping a boarding house, and taking, by consent of Mr. Smith, for her sole and separate use, the money paid by her boarders to the extent of from $100 to $115·a month, the expenses of keeping the boarders being defrayed by the earnings of Mr. Smith in the store. The furniture was purchased by Mrs. Smith out of money received from her husband's business; also the piano, which was a very expensive one ; and these facts were known to Smith's creditors and excited comment among them and others.

Mrs. Smith had no right to retain the furniture and piano against the creditors of her husband, and except for this loan his creditors might have levied upon and taken the piano and so much of the furniture as was not exempt from execution, as well as the equity of redemption in the dwelling-house and the goods in the store. The note was executed by her to save the homestead for herself and husband, and that she might continue the business of keeping boarders therein, and to save her other property, which she claimed to own for her sole and separate use, and to save the business in which her husband was engaged for the support of himself and herself; and the $1,000 obtained of the bank upon the notes was applied in the manner aforesaid, for the benefit of herself and of her husband, they having no children and no family but themselves, and for the benefit of property which she claimed to be her separate estate.

The defendant Susan E. Smith claimed on the foregoing facts, and requested the court to hold—

1st. That she was not liable upon the note signed by her.

2d. That if the plaintiffs had any remedy against her it was in equity and not at law.

The court did not so hold, but found the issue for the plaintiffs, and gave judgment against both defendants.

The defendant Susan E. Smith filed a motion in error and brought the record before this court.

*A. P. Hyde* and *A. B. Calef*, for the plaintiff in error.

A married woman can be liable on her contracts only where they are made for the benefit of herself, her family or her estate. Gen. Statutes, p. 417, sec. 9; *Donovan's Appeal from Probate*, 41 Conn., 556. It is clear that where a married woman becomes obligated for another person's debt, she is not personally liable, and only the property specially charged can be proceeded against. *Aylett* v. *Ashton*, 1 Mylne & Cr., 111; *Vaughan* v. *Vanderstigen*, 2 Drewry, 184; *Shannon* v. *Canney*, 44 N. Hamp., 592; *Parker* v. *Simonds*, 1 Allen, 258; *Crane* v. *Kelley*, 7 id., 250; *Yale* v. *Dederer*, 18 N. York, 265; *Dickson* v. *Miller*, 11 Sm. & Marsh., 594; *Curtis* v. *Engel*, 2 Sandf. Ch., 287; *Vanderheyden* v. *Mallory*, 1 Comst., 463; *Ryder* v. *Hulse*, 24 N. York, 379; *Willard* v. *Eastham*, 15 Gray, 328; *Butler* v. *Buckingham*, 5 Day, 492, 501. It was not for her benefit, for it did not go to pay any of her debts. It was not for the benefit of her family, for she had none. She was able to take care of herself. It was not for the benefit of her estate, for she gave her estate as security for the note.

*S. L. Warner* and *D. Chadwick*, with whom was *J. Attwood*, for the defendants in error.

The act of 1872 provides that an action may be sustained against any married woman upon any contract made by her since her marriage, upon her personal credit, for the benefit of herself, her family, or her separate or joint estate. Gen. Statutes, p. 417, sec. 9. In *Buckingham* v. *Moss*, 40 Conn., 463, the court say that this applies to contracts made before 1872, as well as to those made after the passage of the law; that prior to the passage of the act of 1872, a married woman was liable in equity, and that the law only changes the remedy. It is now settled that a married woman, having property of her own, may make contracts for the benefit of herself, her family and her estate, and that in cases where she actually receives the benefit of the contract it will be binding on her and her estate at law. *Donovan's Appeal from Probate*, 41 Conn., 556. The finding of the judge brings this case pre-

cisely within the act of 1872, and within the law of *Buckingham* v. *Moss*. The money was loaned by the bank, on the personal credit of Mrs. Smith, and for the benefit of what she claimed to be her sole and separate estate, as well as for the direct benefit of herself and her family. *Langenbach* v. *Schell*, 40 Conn., 224; *Wells* v. *Thorman*, 37 id., 318; *Hitchcock* v. *Kiely*, 41 id., 612.

CARPENTER, J. The act relating to suits against married women, approved August 1st, 1872, provides that " actions at law may be sustained against any married woman upon any contract made by her, upon her personal credit, for the benefit of herself, her family, or her estate." It is claimed by the plaintiffs, and the court below so held, that under this act Mrs. Smith was liable in this action.

The husband, being insolvent, had compromised with his creditors. The note in suit was given to raise money to enable him to pay the amount agreed upon, and was secured by a mortgage of the wife's property. That the debt was contracted upon the credit of the wife and her estate may be conceded. But that is not enough to fix her liability. The contract must have been for the benefit of herself, her family or her estate. There was no direct benefit to herself except such as may result from all contracts made by her husband. The substance of the transaction was that she was surety for her husband. It related to his affairs, not hers. Surely the legislature could not have intended to make her liable at law on such contracts.

Nor was it a contract for the benefit of her family in the sense in which that word is used in the statute. It was in the course of her husband's business, and, presumably, was beneficial in a general way to the whole family. But the family was supported by him and not by her. It was not a case in which the wife supported the husband, nor was it a case in which she supported herself and her children independently of the husband, as in the case of *Buckingham* v. *Moss*, 40 Conn., 461.

We are also satisfied that it was not for the benefit of her

estate. In *Langenbach* v. *Schell*, 40 Conn., 224, the wife gave her note for money borrowed to make improvements upon her real estate. In *Donovan's Appeal from Probate*, 41 Conn., 551, the wife borrowed money with which she purchased real estate, taking the deed in her own name. After her decease her estate was held liable in equity for the money so borrowed. In *Hitchcock* v. *Kiely*, 41 Conn., 611, the contract was for the erection of a dwelling-house on the land of the wife with her knowledge and consent. It was held, assuming it to be her contract, that the land was subject to the mechanics' lien on the ground that the contract was for the benefit of her estate.

In all these cases there was a benefit accruing to the wife's estate aside from that which she shared with her husband, and the benefit was direct and immediate. In this case she had no estate which was directly benefited. The benefit to her business, (keeping boarders,) if that may be regarded as her estate, was not direct and certain, but remote and contingent. After the money was received, and her husband's debts paid, it was at his option whether to allow her to continue to take boarders and receive the profits.

Whether the course pursued by these defendants, the husband furnishing supplies, and the wife taking the avails, did not operate as a fraud upon the creditors, which rendered the property thus accumulated liable for his debts, is a question we have no occasion to discuss, as this is not an appropriate proceeding to raise that question.

For these reasons we think that the judgment against the wife was erroneous and must be reversed.

In this opinion the other judges concurred; except PARDEE, J., who did not sit.