IN THE

# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1898, IN THE
EIGHTY-SECOND AND EIGHTY-THIRD YEARS OF THE STATE.

---

### GALVIN v. BRITTON, ADMINISTRATRIX, ET AL.

[No. 18,025. Filed April 7, 1898. Rehearing denied June 17, 1898.]

APPEAL.—*Complaint Assailed for First Time on Appeal.*—A party who permits the complaint of his adversary to go unchallenged in the trial court, and attempts to assail it for the first time on appeal, under section 346, Burns' R. S. 1894, will be required to challenge such complaint on the ground that it does not state facts sufficient to constitute a cause of action; to challenge the complaint on the ground that it does not state facts to entitle the plaintiff "to the relief prayed" is insufficient. *pp. 9, 10.*

SAME.—*Motions.—Review.*—The rulings of the trial court in denying motions to strike out parts of complaint, to postpone trial, for a jury trial, and for change of venue from the county, will not be reviewed on appeal, where such motions were not brought into the record by bill of exceptions. *p. 10.*

DECEDENTS' ESTATES.—*Sale of Real Estate to Pay Debts.—Cross-complaint.—Jurisdiction.*—In a proceeding by an administrator to sell real estate to pay debts of decedent, the court may consider a cross-complaint setting up reasons why the interest of a certain heir should be sold first. *pp. 10, 11.*

MARRIED WOMEN.—*Suretyship.—Estoppel.*—A husband deeds certain land to his wife, but the deed is not recorded. The wife subsequently joins her husband in a mortgage of the land. The mortgagee, in taking such security, is deceived by the conduct of the

Galvin *v.* Britton, Administratrix, *et al.*

husband. *Held*, that the wife is estopped to assert, as against the mortgagee, the benefit of the statute relieving her of liability upon a contract of suretyship. *pp. 12-15.*

From the Marion Circuit Court.    *Affirmed.*

*George W. Galvin*, for appellant.

*John S. Duncan, Charles W. Smith* and *Henry H. Hornbrook*, for appellees.

JORDAN, J.—Albert Galvin died intestate at Marion county, Indiana, on July 7, 1888, and the appellee, Elizabeth Britton, and George W. Galvin, in April, 1893, as administrators of said intestate, instituted, by petition, these proceedings to secure an order of the circuit court to sell certain real property in order to pay the debts and liabilities of the estate. No steps seem to have been taken in respect to this original petition, but in October, 1894, Elizabeth Britton, who at that time had become the sole administratrix of the estate, by leave of court filed an amended petition as a substitute for the original, which appeared to have been lost from the files of the court. Subsequently, she filed another amended petition on which the issues were joined and a trial had in this cause. The latter petition averred that the decedent, Albert Galvin, at the time of his death was the owner in fee simple of three certain described parcels of real estate, situated in the city of Indianapolis, in Marion county, Indiana. The first described parcel may be denominated and known as the Little's hotel property; the second as the Noble street property; the third was described as Lot 18 in McKernan & Pierce's subdivision of outlot 128 in the city of Indianapolis. This amended petition, after setting forth and describing these several parcels of land, and alleging that the same embraced all of the realty of which the decedent died seized, then proceeds to charge that the appellant (who is the wife of George W. Galvin) claimed that she was the

owner of the second parcel, or the Noble street property, and in an adjustment had between appellee, Elizabeth Britton, and the said George W. Galvin, her brother, (they being the children and only heirs of said intestate) that said Galvin and Britton, together with the husband of the latter, after the death of said intestate, had released and quitclaimed their interest in the Noble street property to appellant, who thereafter had mortgaged the same to secure a large indebtedness of her own. The petition further set forth, in respect to the third parcel, that prior to the death of the decedent there had been an attempt to sell the same at sheriff's sale on a judgment rendered against him and his said son, George W., but that the same had been sold under a wrong description to one Oscar F. Britton, and after the death of Albert Galvin, in order to correct the mistake, Elizabeth Britton and her brother, George W., executed a deed to said purchaser, etc. A motion to strike out parts of this petition was filed by appellant and her husband, George W. Galvin, which motion the court denied, and said parties excepted. Mrs. Britton, having made herself a party defendant to the petition, along with George W. Galvin and the appellant, filed a cross-complaint, setting up a certain written proposition or agreement, signed by herself and George W. Galvin, and the appellant, his wife, on February 20, 1889; which agreement in substance and effect is as follows: By its terms and stipulations Mrs. Britton proposed to George W. Galvin, as a settlement of the differences existing between them, as the heirs of the decedent, in regard to their respective interests and liabilities in and to the estate, to take certain pieces of real estate, including what was known as the East street property, which she claimed had been given to her by her father, at a valuation named in the proposition. She

was to pay a $7,000.00 mortgage on the East street property, which had been executed by her said father, the money realized upon said mortgage having been paid to her brother, George W. Galvin. She was also to pay $836.96 to redeem one of the pieces of property from a sheriff's sale, and was to pay $50.00 which had been expended in procuring a quitclaim deed, and was to pay George W. Galvin the sum of $2,000.00 in cash. The latter was to take certain pieces of property at the valuation named in the proposition, including what was known as the Noble street property, which George W. Galvin claimed had been given to his wife by his father in the lifetime of the latter, and he was also to accept as a part of his share $6,000.00 which he owed to the estate of his father, and was to pay $2,000.00 in money. Another piece of property was to be held by Mrs. Britton and her brother, George W., jointly, and another piece was to be conveyed either to Mrs. Britton or her husband, as she might elect. Mutual conveyances were to be made to carry the agreement into effect, so far as the property was to be held in severalty. By this proposition both Mrs. Britton and George W. Galvin were to retain their individual interests in the Little's hotel property, and George W. was to execute to her an indemnifying mortgage on his interest in the said hotel property to secure her (Mrs. Britton) against any liability or loss an account of a note for $1,500.00 executed by the decedent, and then in litigation in the Hancock Circuit Court on a change of venue from Marion county, and any and all other claims and debts against her father's estate, created or incurred for George W. Galvin's benefit, together with all expenses of every character connected with any litigation in relation thereto. All other debts of said estate to be paid, one-half by each of the aforesaid parties. It

was further proposed that letters of administration were to be issued to Mrs. Britton and George W. Galvin jointly. Mrs. Britton was to enter the indemnifying mortgage satisfied when the estate was settled. George W. and his family were to surrender the possession of the house on East street in which they lived, within ten days after the execution of the deeds, on the payment of the sum of $2,000.00. This written proposition, it appears, was delivered to George W. Galvin, who modified it to some extent by requiring the deeds for the property which was to go to him in severalty to be executed either to him or to him and his wife jointly, or to his wife alone, and that the $2,000.00 in cash to be paid by Mrs. Britton should be paid to his wife, the appellant herein. This written proposition, as thus modified, was accepted by the said Galvin and the appellant, his wife, in these terms: "The above proposition is accepted and is to become operative and have the force and effect of a deed upon the payment to Mary K. Galvin of the $2,000.00." This, as heretofore stated, was signed by George W. and Mary K. Galvin, and the written proposition was returned to Mrs. Britton, who received the same and acquiesced in such modification. The parties, it seems, in pursuance of this agreement, executed deeds according to its terms, and Mrs. Britton paid Mrs. Galvin, the appellant, $2,000.00 in money, and George W. and Mary K. Galvin, his wife, executed the indemnifying mortgage to Mrs. Britton as stipulated in the agreement. Letters of administration were issued to George W. and Mrs. Britton jointly, but subsequently the former resigned, and afterwards Mrs. Britton proceeded alone with the administration. The cross-complaint filed by Mrs. Britton sets forth all these facts, and also avers the recovery of a judgment of $1,948.00 on the said $1,500.00

note, and that George W. Galvin had not paid the same, but with costs and interest it was one of the debts for which the petition was filed to provide means of payment; and it also alleged that George W. had by the said agreement undertaken to pay all costs and expenses growing out of such litigation, and that he had wholly failed and neglected to do so; and that while he was acting as administrator he had made divers allowances to attorneys and others of certain sums therein specified for services in such litigation, which existed as unpaid claims against the estate, and was a part of the claims or debts for which it was asked that the land in the petition described be sold for the payment.   It was also alleged therein that all the remainder of the debts of said estate, including interest and costs to the date of the filing of said petition, amounted to $391.03, which, under the terms of said settlement and agreement, should be borne equally by the cross-complainant and the said George W. Galvin. The cross-complainant also averred that she had at all times been ready to pay her one-half thereof, and she then brought one-half of said sum and paid it into court, and she prayed that if the said George W. and the appellant, Mary K. Galvin, should persist in longer litigating the matters and increasing the costs and interest, that the former's share in the estate be first charged with the payment of interest and costs so accrued by reason thereof, and the cross-complaint further prayed that the court might require the administrator first to sell the undivided one-fourth of said Little's hotel property, which had descended to George W. Galvin, and which had been mortgaged under the said agreement for the payment of the remainder of said indebtedness of said estate, to the exoneration of her interest in the lands of said decedent; and she pledged herself in her said complaint to make

Galvin *v*. Britton, Administratrix, *et al.*

such interest, if ordered to be sold, bring enough money to pay all debts, and that only in the event said undivided one-fourth of said hotel property which descended to the said George W. Galvin failed to realize a sum sufficient to pay such debts should any other lands be sold for that purpose.

Appellant filed a separate answer to the petition to sell, to which the appellee, as administratrix, replied, but as no question is raised as to the sufficiency of these pleadings, we need not state the facts therein alleged.

Appellant also unsuccessfully demurred to the cross-complaint of Mrs. Britton, and thereafter she filed an answer thereto in three paragraphs; the first the general denial; the second averred that she was the owner of the undivided one-fourth of the Little's hotel property, describing it, which descended to her husband, George W. Galvin, at the death of his father. It was averred that she became the owner of said interest in said property on the 9th day of July, 1888, by a deed from her said husband, and had been in the possession of the said property since that time, and that the indemnity mortgage mentioned in the cross-complaint was executed by her without any consideration whatever. The third paragraph alleged that the undivided one-fourth interest in the said hotel property had been conveyed to her by her husband for a valuable consideration on the said 9th day of July, 1888, and it was further averred that at the time she executed the indemnity mortgage set out in the cross-complaint she was a married woman, and that the same was executed to secure the debt of the decedent, and that no consideration moved to her for its execution; consequently, she alleged that the said instrument was void and of no effect. Mrs. Britton filed a reply to this answer, wherein it was substantially

alleged, among other things, that appellant was estopped from availing herself of the defense of coverture in respect to the execution of the mortgage in question, for the reason that she and her said husband had withheld the deed to the said hotel property from the public records until after the settlement and agreement referred to in the cross-complaint had been entered into and consummated by the parties, for the purpose of enabling her said husband to hold himself out and represent himself to be the sole owner of the undivided one-fourth interest in such property, until he could effect such agreement and settlement. It was further alleged that the deed to appellant from her said husband to the property was not placed on record until after the execution of the indemnity mortgage; that the cross-complainant at the time the mortgage was executed to her, supposed and believed that George W. Galvin was still the owner of the said property as the same had descended to him from his father, and did not know that his said wife, Mary K. Galvin, claimed to be the owner thereof; that had she known that said George W. was not the owner of said interest at said time she would not have entered into said agreement; that appellant, Mary K. Galvin, joined in the execution of the mortgage and received the sum of $2,000.00 in consideration for her doing so. Other facts tending to support the issue of estoppel are averred.

The issues were joined between the parties upon these several pleadings, and after hearing the evidence, the court ordered that the undivided one-fourth interest in the Little's hotel property be sold for the payment of the debts and liabilities existing against the estate, and appointed a commissioner to make such sale, and directed upon what conditions and

terms the property should be offered and sold at pub-
lic auction, etc.

Appellant filed a motion for a new trial, wherein
she assigned eight reasons in support thereof: (1)
that the court erred in denying her a change of venue
from the county; (2) in compelling her to go to trial
without having first disposed of her cross-complaint
for partition. The third reason assigned is equivalent
to the second. (4) In denying her right to a trial by
jury; (5) insufficiency of the evidence; (6) that the find-
ing is contrary to law; (7) that the finding and order is
contrary to law; (8) refusal of the court to submit the
trial of her partition proceedings to a jury. The mo-
tion was overruled, and this action of the court, among
others, is assigned as error.

All of the causes embraced in the motion for a new
trial, except the fifth, sixth and seventh, are also in-
dependently specified in the assignment of errors.
The other errors assigned are, (1) that the amended
petition of the administratrix does not state facts suf-
ficient to entitle her to the relief prayed; (2) that the
cross-complaint of Elizabeth Britton does not state
facts sufficient to constitute a cause of action; (3) that
the court erred in overruling the motion to strike out
parts of the petition; (7) that the court erred in over-
ruling the demurrer to the amended cross-complaint of
Elizabeth Britton.

The first assignment of error does not assail the
petition for insufficiency of facts to constitute a cause
of action, but it is alleged, as we have seen, that the
petition does not state sufficient facts to entitle her to
the relief prayed. It is evident that this assignment
does not respond to the requirements of the exception
provided by section 346, Burns' R. S. 1894 (343, R. S.
1881), which authorizes a party to challenge a com-
plaint on appeal for the first time on the ground that

it does not state facts sufficient to constitute a cause of action. A party who lies by and permits the complaint of his adversary to go unchallenged in the trial court, and attempts to assail it for the first time in this court by an assignment of error under the statute referred to, will be required to strictly conform to its provisions. But in dismissing the question, however, we may say that the petition shows the necessity for resorting to the real estate owned by the decedent at the time of his death in order to pay the debts of the estate, and is certainly sufficient to withstand an attack when made for the first time on appeal.

Appellant complains of the decisions of the court in overruling each of the following motions or applications: (1) To strike out certain parts of the petition; (2) to postpone the trial of the cause until after the hearing of her petition for partition; (3) overruling her application for a trial by jury; (4) denying her application for a change of venue from the county. It is sufficient, however, to say that none of these motions or applications, nor the grounds on which they are based, have been properly brought into the record by a bill of exceptions, or otherwise, consequently, no question in respect to these several rulings of the court is presented for our consideration. This rule is so well settled, and universally recognized by the legal profession, that the citation of authorities in support thereof is useless. It may be further said, however, that the application for the change of venue is shown to have been denied for the reason that it was not made within the time fixed by the rules of the lower court.

There is an insistence on the part of the appellant that the lower court was not authorized to consider or exercise jurisdiction over the question presented by the cross-complaint of appellee, for the reason that

Galvin *v.* Britton, Administratrix, *et al.*

an action to sell real estate for the payment of claims against a decedent's estate is purely a statutory proceeding and must be controlled wholly by the statute. Certainly it may be said that independently of the statute the circuit court has the power in such proceedings when it is shown by the facts and circumstances under the issue joined between one or more of the heirs or other persons, parties thereto, to order that the interest of one of such heirs or parties in one of the tracts or parcels of land embraced in the petition shall be first sold in exoneration of the interest of others in and to such realty. If equity or good conscience requires that the court should so mould its order as to bring about such a result it clearly is vested with the power so to decree or order, having due regard or consideration, however, that its action under the circumstances does not interfere with or retard the rights of the administrator or those of creditors of the estate, to subject so much of the decedent's real estate to a sale as may be necessary for the payment of the debts, as the statute directs. That the circuit courts of this State in the exercise of their probate jurisdiction and powers with which they are invested by the statute in respect to the estates of decedents, have the right or power, when the necessity of the case demands, to determine, either legal or equitable questions, when they are properly presented, or arise in the course of probate jurisdiction, and to award all necessary relief, whether legal or equitable, is a rule well settled by the authorities. *Powell* v. *North,* 3 Ind. 392, 56 Am. Dec. 513; *Dehart* v. *Dehart,* 15 Ind. 167; *Smock* v. *Reichwine,* 117 Ind. 194; *Hyland* v. *Baxter,* 98 N. Y. 610; *Blanton* v. *King,* 2 How. (Miss.) 856; *Donovan's Appeal,* 41 Conn. 551; Woerner's American Law of Administration, section 149, and authorities cited to this section in foot-note 3, p. 340.

The only other question which is discussed by appellant's counsel is that the judgment of the court is not sustained by sufficient evidence, and is also contrary to law.    We have examined the evidence, but do not deem it necessary to go into a general discussion thereof, as we are satisfied that it fully sustains the judgment or order of the court.    There is no merit in the contention of appellant that it appears from the evidence that there was no consideration for the promise of George W. Galvin to pay the amount of the fifteen hundred dollar note which was in litigation at the time of the execution of the written agreement set out in Mrs. Britton's cross-complaint.    Not only does the evidence disclose that the settlement of the differences and disputes existing between George W. Galvin and his sister, Mrs. Britton, was a part of the consideration for this agreement, but it is shown that a money consideration also entered into the same and formed a part thereof.

It is contended by appellant that it is shown by the evidence that at the time she executed the indemnity mortgage in controversy she was a married woman, the wife of George W. Galvin, and the owner of the mortgaged premises, the undivided one-fourth interest in the hotel property, and that the mortgage debt was not her own, but was a claim or debt existing against the estate of the decedent, therefore, her act in pledging this property by the mortgage for the payment of said debt was void by reason of the statute which prohibits a married woman from becoming a surety for another.

Counsel for appellee, however, insist that the evidence fully establishes that appellant is estopped from controverting the validity of this mortgage.    It appears from the evidence that Albert Galvin, the decedent, died late on Saturday night of July 7, 1888,

leaving surviving him as his only heirs the appellee, his daughter, and his son, George W. Galvin, husband of appellant. On Monday following the death of his father, in the forenoon of that day, George W. executed a deed to his said wife for the property in dispute, being the undivided one-fourth of the Little's hotel property. This deed was not filed for record in the recorder's office of Marion county until June 4, 1889, some three months and over after the execution of the agreement in question under which the settlement was made and the mortgage in controversy executed. There is evidence to show that at the time of the execution and acceptance of the written agreement by the parties, Mrs. Britton, George W. Galvin and the appellant, the appellee, had no information or notice that her brother, George W. Galvin, had conveyed the hotel property to the appellant. She seems to have believed and relied upon the same, when she entered into the agreement and accepted the mortgage from the parties, that George W. was still the owner of said property. There is evidence which connects appellant with the deceit practiced by her husband on the appellee in regard to his being the owner at said time of the undivided interest in the hotel property embraced in the mortgage and taken into consideration in the settlement, and that appellant induced the appellee to place reliance in the representations and acts of her husband, George W., in respect to his ownership of the real estate in question. Appellant received the $2,000.00 paid by Mrs. Britton, and derived other benefits arising out of said settlement and the execution of the mortgage, and it was not until after appellee had performed her part of the agreement and completely changed her situation relative to her rights in the estate of her father, that appellant brought forth her deed and placed it on the

public records, and appellee then became aware of the fact that appellant was claiming to own the property. The question is not as to whether the appellant was a principal or surety, but the proposition is whether, under all of the facts and circumstances disclosed by the evidence, she is estopped by her conduct and representations from asserting or claiming the benefit of the statute relieving her of liability upon a contract of suretyship. Section 6964, Burns' R. S. 1894 (5119, R. S. 1881). It is not whether she may affirm or ratify a void contract, but as to whether she is estopped from asserting the defense given her by the statute. *Voreis* v. *Nussbaum*, 131 Ind. 267, 16 L. R. A. 45; *Trimble* v. *State, ex rel.*, 145 Ind. 154.

In the case last cited, we said: "The disability as to suretyship, imposed by the statute upon a married woman, must be considered in connection with another provision of the same act, to the effect that she shall be bound by an estoppel *in pais*, and no construction ought to be given to this exception by the statute of her ability to contract, as will place in her hands a sword to defend her own fraud and imposition on others, instead of a shield for her protection, as the law intended."

There is evidence which the trial court seems to have deemed credible and reliable which sustains the estoppel plead by the reply to appellant's answer to the cross-complaint, and we would not, therefore, be justified in disturbing the judgment upon this issue.

But it is insisted by counsel for appellee that upon another view of the case appellant is debarred from assailing the validity of the mortgage, for the reason that it was in part at least for her benefit. Counsel say that the evidence shows that the $1,500.00 note was the debt of the decedent, and therefore, when he died, under the law all of his property was charged

with its payment, and also all of the other claims against his estate, consequently when appellee's husband conveyed the mortgaged premises in controversy to her she took them subject to the payment of the liabilities of the intestate.  She, it is said, claimed to be the owner of the Noble street property, but this claim was denied by the appellee.  "She claimed to be the owner of the East street property, and this was denied."  By the adjustment and settlement under the agreement executed by the parties, all of these controversies and disputes were settled in favor of appellant as to these pieces of property.  That under the agreement appellant received a deed from appellee for the Noble street property, she also thereunder received a deed in connection with her husband to forty acres of land, and, in addition, $2,000.00 from Mrs. Britton.  It is contended that in consideration of this it appears that appellant agreed that the interest which she now claims through her husband in the hotel property should be pledged for the payment of the debts or claims specified in the agreement and mortgage to the exemption of all of the other real estate; or, in other words, that the evidence shows that the contract inured to appellant's benefit, or to the betterment of her estate, and therefore it cannot be said that in executing the mortgage she became a surety.  There is evidence supporting this theory of the case, and it may therefore be said that the question in respect to the validity of the mortgage may be decided, under the evidence, in favor of appellee upon either view presented.  There is no available error in the record, and the judgment or order of the court is affirmed.